**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    - vs –<br><br>**DAVID R. BERGSTEIN,** *et al,*<br><br>        **Defendant.**<br><br><br>**In Re Grand Jury Subpoena (Gaynor & Umanoff LLP)** | Case No. 16-cr-746-PKC |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**DAVID BERGSTEIN'S MOTION TO QUASH POST-INDICTMENT**
**GRAND JURY SUBPOENA**

Thomas H. Bienert, Jr.
Kenneth M. Miller
Anthony R. Bisconti
BIENERT, MILLER & KATZMAN PLC
903 Calle Amanecer, Ste. 350
San Clemente, CA 92673
T: 949.369.3700
F: 949.369.3701
E-mail: tbienert@bmkattorneys.com
        kmiller@bmkattorneys.com
        tbisconti@bmkattorneys.com

*Counsel to David Bergstein*

Dated: December 21, 2017

Defendant David Bergstein ("Mr. Bergstein") brings this motion as a result of yet another misuse of the grand jury to obtain materials to prepare this case for trial. The Court should quash the post-indictment grand jury subpoena dated December 5, 2017 (the "Grand Jury Subpoena")[1] served on December 13 by the government on Gaynor & Umanoff, LLP (the "Gaynor Firm"), who was engaged by Mr. Bergstein's tax counsel under a Kovel agreement.[2] The facts and circumstances indicate the grand jury subpoena is improperly being used to prepare for the upcoming trial, and it seeks privileged information. Mr. Bergstein also repeats his request that the Court take the further actions outlined below to protect against other instances of abuse.

## I.    RELEVANT BACKGROUND

The Gaynor Firm, an accountancy and tax advisory firm, was engaged under a Kovel agreement by Mr. Bergstein's tax counsel, Hochman, Salkin, Rettig, Toscher & Perez, P.C. (the "Hochman Firm"), with respect to various tax matters. Earlier this month, on December 13, 2017, the government served the Gaynor Firm with a grand jury subpoena calling for production just 6 days later, by December 19, 2017, of "(a) all federal and state tax returns for 2008 through 2016, including all attachments, including but not limited to all Form W2s and 1099s; (b) all documents, information, and workpapers used to prepare such tax returns; and (c) all Form W2s, 1099s, and K-1s for the period 2008 through 2016; and (d) all correspondence with the taxpayer" for Mr. Bergstein. *See* Stigile Decl., Ex. 1. The grand jury subpoena and cover letter are under signature of Robert Allen, one of the AUSAs handling the pending trial against Mr. Bergstein.

On December 18, 2017, in anticipation of the scheduled February 5, 2018 criminal trial against Mr. Bergstein, the government filed its *Motions In Limine*. Doc. 172. In those motions, the government expressly seeks an order permitting it to introduce at trial in this case Mr. Bergstein's federal income tax returns as either "direct evidence of the charged crimes" or, alternatively, "pursuant to Rule 404(b)." *See* Doc. 172 at 20. The government stresses that Mr.

---

[1] A true and correct copy of the Grand Jury Subpoena is attached as Exhibit 1 to the accompanying declaration of Cory Stigile (the "Stigile Decl.").

[2] A Kovel arrangement extends the attorney-client privilege to an accountant's communications with the tax payer under certain situations. *See U.S. v. Adlman*, 68 F.3d 1495 (2d Cir. 1995).

Bergstein's "tax returns are therefore important to rebut any defense that Bergstein acted in good faith and was lawfully entitled to the proceeds that he received." *Id.* at 21. The Indictment against Mr. Bergstein and the government's motions in limine reference business transactions in the years 2008, 2011 and 2012.

After the government served the Grand Jury Subpoena on December 13, 2017, the Hochman Firm contacted Special Agent James Kim of the Internal Revenue Service (who left his card with the Grand Jury Subpoena), to discuss an extension of time to respond to the subpoena until at least January 19, 2018. *See* Stigile Decl., ¶ 4. SA Kim initially stated that he had no objection to the requested extension, but would need to check with the AUSA in charge of Mr. Bergstein's case, and then then handed the phone to an individual representing himself to be an AUSA out of the Southern District of New York office, apparently AUSA Imperatore. *Id.* At the time of this call SA Kim, a California-based agent, was working in the same room as the New York AUSA, clearly indicating they are working together on the matter. The New York AUSA stated that the government would only agree to a brief extension, to January 3, 2018. *Id.* After discussing further, the AUSA would agree only to a short extension to January 5, 2018. *Id.*

## II.    ARGUMENT

### A.    The Court Should Quash The Grand Jury Subpoena As A Misuse Of The Grand Jury Process To Prepare For Trial In An Already Indicted Case.

"The law is settled in this circuit and elsewhere that it is improper to utilize a Grand Jury for the sole and dominating purpose of preparing an already pending indictment for trial." *Simels*, 767 F.2d at 29 (quoting *United States v. Dardi*, 330 F.2d 316, 336 (2d Cir. 1964); *United States v. Jones*, 129 F.3d 718, 723 (2d Cir. 1997)). "[T]he grand jury is not meant to be the private tool of a prosecutor." *United States v. Fisher*, 455 F.2d 1101, 1105 (2d Cir. 1972). The United States Attorneys' Manual itself provides that "the grand jury cannot be used solely to obtain additional evidence against a defendant who has already been indicted . . . . Nor can the grand jury be used solely for pre-trial discovery or trial preparation." *U.S.A.M.* § 9-11.120 (citations omitted).

In *Simels*, the Second Circuit reversed the district court's denial of a motion to quash a

grand jury subpoena in an already-indicted case prior to trial. 767 F.2d at 29-30. There, the defendant (Payden) was indicted, and the grand jury returned a superseding indictment two months later. *Id.* at 27. Subsequently, the government obtained and issued a trial subpoena on Payden's counsel (Simels), commanding that he produce certain records related to his client for use at trial, which was scheduled to begin several months later. *Id.* at 28. Simels opposed the subpoena. *Id.* The government withdrew the trial subpoena but issued a grand jury subpoena seeking the very same materials requested in the trial subpoena. *Id.* Payden moved to quash the grand jury subpoena as an abuse of the grand jury because its purpose was to obtain evidence for use at trial in the already indicted case, and because it impinged on Payden's right to counsel. *Id.* The district court denied the motion to quash, accepting the government's assertion that "the grand jury's investigation was still in progress at the time the subpoena was issued" and that "further grand jury investigation" could yield "additional charges" against the defendant and/or others. *Id.* at 28-29.

The Second Circuit reversed, stressing that the grand jury may not be "<u>misused by the prosecutor for trial preparation</u>." *Id.* at 29-30 (emphasis added). The court emphasized that "<u>[t]he timing of the subpoena casts significant light on its purposes</u>." *Id.* at 29 (emphasis added). Because the government only issued the grand jury subpoena *after* opposition was raised to its attempt to use a trial subpoena for the same evidence, the Second Circuit found that the defendant made a "strong showing that the government's dominant purpose . . . was pretrial preparation." *Id.* at 29-30. So the Second Circuit quashed the subpoena "as an abuse of the grand jury process." *Id.*

The government's intent to use the Grand Jury Subpoena to the Gaynor Firm to prepare for trial is inescapable. The grand jury subpoena was served only a week ago and is signed by the same AUSA prosecuting Mr. Bergstein in the criminal case. The subpoena includes the tax years the government has placed at issue in the criminal case – 2008, 2012 and 2013. The handling AUSA provided a mere two week turnaround on the grand jury subpoena, and despite the upcoming holidays the New York AUSA addressing the issue – presumably AUSA Imperatore - refused counsel's request to extend the date 30 days, a reasonable requested timeframe any time of the year, and particularly during the holiday season. Instead, the AUSA insisted that the

documents be produced by January 5, 2016, which happens to be one month before trial against Mr. Bergstein and shortly before the government's exhibits are required to be produced. Conveniently, the documents sought by the grand jury subpoena happened to be documents the government expressly admits it intends to introduce at trial—either as "direct evidence of the charged crimes" or, alternatively, "pursuant to Rule 404(b)," and that the government believes Mr. Bergstein's "tax returns are therefore important to rebut any defense that Bergstein acted in good faith and was lawfully entitled to the proceeds that he received." Doc. 172 at 20 & 21. Accordingly, just as in *Simels*, the Court should quash the Grand Jury Subpoena "as an abuse of the grand jury process" to prepare an already indicted case for trial.

This is not the first time Mr. Bergstein has learned the government was seeking evidence for use at trial through grand jury subpoena.  As the Court knows, after the government learned defendant obtained some, but not all, recordings made by government informant Paul Parmar, the government issued a grand jury subpoena for those same recordings to Mr. Bergstein's former counsel after the Court rejected the government's request that the Court order Mr. Bergstein to produce the recordings under Rule 16.  *See* Doc. 121.  The Court denied defendant's motion to quash that subpoena, noting the government satisfactorily represented in an under-seal government filing (unavailable to the defense) that it was investigating new matters. *See* Doc. 142.  There is no doubt, however, that the government is using those recordings, at least in part, to prepare for the upcoming February trial.

The same is true of the government's recent attempt to use a grand jury subpoena (originally dated September 19, 2016) to seek information directly related to the transactions alleged in the Indictment to prepare this case for trial from another of Mr. Bergstein's former counsel, Michael Barnes.  Mr. Bergstein separately filed a motion to quash that grand jury subpoena, which remains pending as of the filing of this motion.  *See* Doc. 167.  The government represented to the Court in its reply to the motion to quash this grand jury subpoena that attorney Barnes agreed to produce documents and never suggested that the subpoena was somehow burdensome or oppressive.  *See* Doc. 175 at 4-5.  This claim seems inaccurate.  On December 15,

2017, Mr. Barnes emailed AUSA Imperatore, and advised him that:

> In addition, the motion to quash includes allegations by Mr. Bergstein that the purported subpoena is invalid, for a variety of reasons therein stated . . . **Mr. Bergstein's objections seem on their face to be colorable and made in good faith, and I too alerted you on December 5 to the likelihood of such type of objections being made in response to your purported subpoena.** Mr. Bergstein's motion to quash appears to be an additional substantive assertion of attorney-client privilege or some right sounding in privilege. As such, I am obligated to abide by such assertion and instruction sounding in attorney-client privilege, and shall wait for adjudication thereof by a court of competent jurisdiction.[3]

It is happenstance that the defense has learned of these three instances of the government using grand jury subpoenas to prepare this case for trial. It is likely that there are other instances about which Mr. Bergstein is unaware. Indeed, this would not be surprising as the government routinely requests that grand jury subpoena recipients "voluntarily refrain" from informing anyone about the subpoena and warns that disclosure could amount to obstruction. *See* Stigile Decl., Ex. 1 (Cover Letter to Grand Jury Subpoena). Accordingly, Mr. Bergstein repeats his request that this Court order the government to disclose to the defense, or to the Court *in camera*, any other grand jury subpoenas that have been issued and/or served in the last 6 months that have resulted or could result in production of evidence that the government may use to prepare for or during the upcoming February 5, 2018 trial. Defendant should be apprised of evidence obtained in this way so he may consider objecting to introduction at trial of such evidence. *Cf. United States v. Ray*, 375 F.3d 980, 994 (9th Cir. 2004) ("[A]s part of their supervision of grand jury proceedings, district courts continue to possess the 'inherent ability . . . to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice,' so long as those rules do not contravene or circumvent other federal statutes or rules."). Unlike the government, the defense does not have the ability to issue grand jury subpoenas. Given the facts indicating the government's use of used grand jury subpoenas to obtain evidence for the instant trial, the Court should fashion orders to ensure the government does not abuse its subpoena power. Such an order

---

[3] *See* Exhibit A attached hereto (emphasis added), which is a true and correct copy of a December 15, 2017 email from Mr. Barnes to AUSA Imperatore, which Mr. Barnes forwarded to undersigned counsel.

is made even more necessary when viewed against the backdrop of the government's affirmative attempts to preclude Mr. Bergstein from obtaining third party evidence through the few procedural tools available to a defendant, like Rule 17 subpoenas.[4]

The government's use of grand jury subpoenas to obtain evidence for trial, while at the same time seeking to preclude defendant Bergstein from obtaining discovery of documents relevant to the defense, is offensive to notions of Due Process.

**B.    The Court Should Quash The Grand Jury Subpoena Because It Seeks Production Of Privileged Communications And/Or Protected Work Product.**

The attorney-client privilege forbids an attorney from disclosing confidential communications obtained from the client during the course of professional consultations. *See United States v. Adlman*, 68 F.3d 1495, 1499 (2d Cir. 1995) (citing *United States v. Schwimmer,* 892 F.2d 237, 243 (2d Cir.1989)).  "The privilege is intended to encourage clients to be forthcoming and candid with their attorneys so that the attorney is sufficiently well-informed to provide sound legal advice."  *Id.* (citations omitted).  Similarly, the "attorney work product privilege protects 'the files and the mental impressions of an attorney . . . reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways' prepared in anticipation of litigation." *A. Michael's Piano, Inc. v. F.T.C.,* 18 F.3d 138, 146 (2d Cir.1994) (quoting *Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947)).

Privileged communications with counsel extend to shield communications to others when the purpose of the communication is to assist the attorney in rendering advice to the client.  *See Adlman*, 68 F.3d at 1499 (citing *United States v. Kovel*, 296 F.2d 918, 922 (1961) (noting that in *Kovel* the Second Circuit "recognized that the privilege would extend to communications by an attorney's client to an accountant hired by the attorney to assist the attorney in understanding the

---

[4] The government has filed a Motion to Quash defendant Bergstein's Court reviewed Rule 17 subpoenas on government cooperator Albert Hallac and co-defendant (and now government cooperator) Keith Wellner. Defendant Bergstein has filed an Opposition to that Motion to Quash.

client's financial information" and "[h]ence the presence of an accountant . . . while the client is relating a complicated tax story to the lawyer, ought not to destroy the privilege. . . .")).

Here, Mr. Bergstein retained as legal counsel the Hochman Firm, a law firm whose attorneys practice primarily in providing tax litigation services. The Hochman Firm had a Kovel arrangement with the Gaynor Firm. The Grand Jury Subpoena plainly seeks privileged communications and protected work product by seeking, among other things, all work papers and correspondence with Mr. Bergstein. Accordingly, the Court should quash the Grand Jury Subpoena for this separate and independent reason.

## III.    CONCLUSION

For the foregoing reasons, the Court should quash the Grand Jury Subpoena. Additionally, the Court should order the government to submit to Mr. Bergstein, or to the Court *in camera*, all grand jury subpoenas that have been issued and/or served in the last 6 months that have resulted or could result in production of evidence that the government may use to prepare for or in the upcoming February 5, 2018 trial.

Dated:  December 21, 2017
**BIENERT, MILLER & KATZMAN PLC**
By:    /s/ Thomas H. Bienert, Jr.
         Thomas H. Bienert, Jr.
         Kenneth M. Miller
         Anthony R. Bisconti
         903 Calle Amanecer, Ste. 350
         San Clemente, CA 92673
         T: 949.369.3700
         F: 949.369.3701
         E-mail: tbienert@bmkattorneys.com
                    kmiller@bmkattorneys.com
                    tbisconti@bmkattorneys.com

         *Counsel to David Bergstein*

422792-2

Exhibit A

## Tony Bisconti

**From:** Michael Barnes <mbarnes@barneslaw.us>
**Sent:** Friday, December 15, 2017 9:41 AM
**To:** Tony Bisconti
**Cc:** Tom Bienert; Ken Miller
**Subject:** FW: Subpoena


-----Original Message-----
From: Michael Barnes
Sent: Friday, December 15, 2017 9:39 AM
To: 'Imperatore, Edward (USANYS)'
Subject: RE: Subpoena

Ed,

I have been advised by counsel for a holder of the attorney client privilege (an ex-client named David Bergstein and his affiliated companies) that he has filed a motion to quash the purported subpoena that you provided to me on December 5. That motion to quash states that my responses to your subpoena would involve confidential material covered by the privileges stemming from the attorney-client relationship. As such, I interpret Mr. Bergstein's filing of his motion to quash as an assertion of attorney-client privilege by the holder of such privilege, and an instruction to me to abide by my duty to preserve such claim of privilege. Accordingly, on behalf of a privilege holder (David Bergstein), I preserve his assertion of privilege in response to your subpoena.

In addition, the motion to quash includes allegations by Mr. Bergstein that the purported subpoena is invalid, for a variety of reasons therein stated. I understand that a court of competent jurisdiction will decide those issues. I interpret Mr. Bergstein's filing of such motion to quash as an instruction to me by a holder of attorney-client privilege, that I not comply with your purported subpoena until its validity can be determined by a court of competent jurisdiction. Mr. Bergstein's objections seem on their face to be colorable and made in good faith, and I too alerted you on December 5 to the likelihood of such type of objections being made in response to your purported subpoena. Mr. Bergstein's motion to quash appears to be an additional substantive assertion of attorney-client privilege or some right sounding in privilege. As such, I am obligated to abide by such assertion and instruction sounding in attorney-client privilege, and shall wait for adjudication thereof by a court of competent jurisdiction.

Please do update me once such adjudication occurs, and I will review the matter further at such time.

Thank you,
Michael Barnes Esq.
Barnes Law Firm PC

-----Original Message-----
From: Imperatore, Edward (USANYS) [mailto:Edward.Imperatore@usdoj.gov]
Sent: Tuesday, December 5, 2017 4:04 PM
To: Michael Barnes
Subject: Re: Subpoena

Michael,

We are not inclined to make any further changes to the face of the subpoena.

For the avoidance of any doubt, and consistent with our office's practice, I am representing to you that the return date is extended to December 15, 2017.  The rider of course relates to your law firm, the Barnes Law Firm, at its address on Wilshire Boulevard in Santa Monica.

On Dec 5, 2017, at 6:54 PM, Michael Barnes <mbarnes@barneslaw.us<mailto:mbarnes@barneslaw.us>> wrote:

Ed,

For the avoidance of any doubt on anyone's part in reviewing this subpoena at a later date, can you please do the following to fix the errata on the face of this subpoena:

1. Please write today's date next to your handwritten change to the address on page 2, to evince the date of that change.

2. Please change and initial and date the change to the September 28th due date on page 2.

3. Please change the incorrect address on page 4, and initial and date that change.

Thank you, and email is OK for service of the revised subpoena.

-Michael Barnes
Barnes Law Firm PC

------ Original message------
From: Imperatore, Edward (USANYS)
Date: Tue, Dec 5, 2017 5:44 PM
To: Michael Barnes;
Subject:Re: Subpoena

We are extending the appearance date - i.e., the due date for producing responsive material - to Friday, December 15.

On Dec 5, 2017, at 6:39 PM, Michael Barnes
<mbarnes@barneslaw.us<mailto:mbarnes@barneslaw.us><mailto:mbarnes@barneslaw.us>> wrote:

Ed,

Could you correct the incorrect dates please. For example it still shows a September 2016 due date. That due date is impossible. I want no erroneous inference that the September 2016 document was ever served on me or received by me. December 5 2017 is the first date this ever came to me.

Thank you,

-Michael Barnes
Barnes Law Firm PC

------ Original message------
From: Imperatore, Edward (USANYS)
Date: Tue, Dec 5, 2017 5:22 PM
To: Michael Barnes;
Subject:Subpoena

Michael,

Following up on our conversation, attached is the subpoena with your office address corrected.

Thank you.