UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
UNITED STATES OF AMERICA,
                                                            :
          - v. -                             **16 Cr. 746 (PKC)**
                                                            :
DAVID BERGSTEIN,
                                                            :
               Defendant.
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
DAVID BERGSTEIN'S MOTION TO QUASH GRAND JURY SUBPOENA**


                                        JOON H. KIM
                                        Acting United States Attorney
                                        Southern District of New York
                                        Attorney for the United States of America


Edward A. Imperatore
Robert W. Allen
Elisha J. Kobre
Assistant United States Attorneys
       -Of Counsel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                             :
UNITED STATES OF AMERICA,
                                                             :
            - v. -                                               **16 Cr. 746 (PKC)**
                                                             :
DAVID BERGSTEIN,
                                                             :
            Defendant.
                                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DAVID BERGSTEIN'S MOTION TO QUASH GRAND JURY SUBPOENA

The Government respectfully submits this memorandum of law in opposition to defendant David Bergstein's motion to quash a grand jury subpoena, issued on December 5, 2017, to Gaynor & Umanoff LLP ("Gaynor"), an accounting firm that prepared Bergstein's tax returns (the "Subpoena"). Bergstein's motion improperly seeks to interfere with an active grand jury investigation and should be denied for the straightforward reason that the Subpoena was not issued for the sole or dominating purpose of preparing for trial. To the contrary, the Subpoena was issued in connection with what the Court and defense counsel have acknowledged is an ongoing grand jury investigation. Moreover, Bergstein has neither standing, nor a legal basis, to challenge the Subpoena. His motion is meritless and should be denied.

This is the third motion to quash a grand-jury subpoena filed by Bergstein, who appears to have instructed the recipient of each respective subpoena not to comply until this Court resolves his motion. Given this interference with an ongoing grand-jury investigation, the Government respectfully requests that the Court resolve Bergstein's motion by January 5, 2018, the current return date provided by the Government to Gaynor.

2

**BACKGROUND**

On November 9, 2016, Indictment 16 Cr. 746 (PKC) (the "Indictment") was unsealed, charging Bergstein with conspiracy to commit investment advisor fraud and securities fraud, in violation of Title 18, United States Code, Section 371 (Count One); investment advisor fraud, in violation of Title 15, United States Code, Sections 80b-6 and 80b-17 (Counts Two and Three); securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5 (Counts Four and Five); conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349 (Count Six); and wire fraud, in violation of Title 18, United States Code, Section 1343 (Count Seven).

In July 2017, the Government issued a grand jury subpoena to Alex Weingarten, Esq., an attorney who represented Bergstein in civil litigation, seeking the production of various recordings produced by Paul Parmar to Weingarten in civil litigation. Bergstein subsequently moved to quash the subpoena on the grounds that the subpoena misused the grand jury process to prepare for trial in an already indicted case, infringed upon protected work product, and was unreasonable and oppressive. The Court denied the motion. In a memorandum and order dated October 10, 2017, the Court held that "[b]ased on *ex parte* submissions by the government, the Court is persuaded that the subpoena at issue is not for the sole or dominating purpose of gaining evidence for trial" in view of the Government's "active grand jury investigation." (Oct. 10, 2017 Mem.& Order [Dkt. 142] at 2). The Court further held that "Bergstein has no standing to challenge the subpoena on the grounds that it is unreasonable or oppressive as to Weingarten." (*Id.* at 4).

Around the same time that this Court denied Bergstein's first motion to quash a grand jury subpoena, Bergstein's counsel acknowledged that the Government had an ongoing investigation

into other conduct and even asked to confer about the timing of additional charges.  In an October

9, 2017 letter, for example, Bergstein's counsel stated:

> We also understand that your continuing investigation is covering not only facts and issues that are part of the current indictment, but also includes conduct not charged in the Indictment. Please advise whether the government intends on filing a superseding indictment prior to our trial, currently scheduled to commence February 5, 2018, so that we can address with you the impact a superseding indictment could have on our current trial date.

(Ex. A, Oct. 9, 2017 Ltr. at 1).

On or about December 5, 2017, the Government issued the Subpoena to Gaynor seeking

Bergstein's personal state and federal income tax returns for 2008 through 2016 and related

documentation and correspondence.  The Subpoena was issued primarily for the purpose of

furthering the ongoing investigation into conduct not charged in the Indictment.[1]

On or about December 21, 2017, Bergstein filed the instant motion to quash the Subpoena.

This is Bergstein's third motion to quash a grand jury subpoena in this investigation.[2]

---

[1] Additional information regarding the ongoing grand jury investigation is contained in a letter to the Court which is being filed *ex parte* and under seal as it pertains to an ongoing grand jury investigation.

[2] On or about December 12, 2017, Bergstein moved to quash an outstanding grand jury subpoena issued to the Barnes Law Firm (the "Barnes Subpoena") on the ground that it was issued for the purpose of preparing for trial, despite the fact that the Barnes Subpoena was issued before the Indictment was returned.  The Government opposed that motion on the ground that the Barnes Subpoena related to an active grand jury investigation and was neither oppressive nor burdensome.

**DISCUSSION**

### A. Applicable Law

### 1. Proper Use of the Grand Jury After an Indictment is Returned

"A grand jury's investigative power does not end when it indicts a defendant. Instead, 'post-indictment action is permitted to identify or investigate other individuals involved in criminal schemes or to prepare superseding indictments against persons already charged.'" *United States* v. *Meregildo*, 876 F. Supp. 2d 445, 448-449 (S.D.N.Y. 2012) (quoting *United States* v. *Jones*, 129 F.3d 718, 723 (2d Cir. 1997)) (internal citations omitted). While it is "improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial," *In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985* (*Robert M. Simels Esq.*), 767 F.2d 26, 29 (2d Cir. 1985) ("*Simels*"), "where the grand jury investigation is not primarily motivated by this improper purpose, evidence obtained pursuant to the investigation may be offered at the trial on the initial charges." *United States* v. *Leung*, 40 F.3d 577, 581 (2d Cir. 1994).

"Because a presumption of regularity attaches to grand jury proceedings, a defendant seeking to exclude evidence obtained by a post-indictment grand jury subpoena has the burden of showing that the Government's use of the grand jury was improperly motivated." *United States* v. *Bin Laden*, 116 F. Supp. 2d 489, 492 (S.D.N.Y. Oct. 5, 2000) (quoting *United States v. Leung*, 40 F.3d at 581); *United States v. Punn*, 737 F.3d 1, 6 (2d Cir. 2013) ("The defendant has the burden of proving that the grand jury subpoenas were issued for an improper purpose, as the subpoenas are otherwise presumed to have a proper purpose."); *United States* v. *Sasso*, 59 F.3d 341, 352 (2d Cir. 1995) ("There is a presumption that [a post-indictment] subpoena had a proper purpose."); *United States* v. *Raphael*, 786 F. Supp. 355, 358 (S.D.N.Y. 1992). "To satisfy this burden, the

defendant 'must present particularized proof of an improper purpose.'" *Punn*, 737 F.3d at 6 (citing *United States* v. *Salameh*, 152 F.3d 88, 109 (2d Cir. 1998)).

"[A]bsent some indicative sequence of events demonstrating an irregularity, a court has to take at face value the Government's word that the dominant purpose of the Grand Jury proceedings is proper." *United States* v. *Ohle*, 678 F. Supp. 2d 215, 233 (S.D.N.Y. 2010) (quoting *United States* v. *Raphael* 786 F. Supp. at 358); *United States* v. *Meregildo*, 876 F. Supp. 2d 445 (denying motion to quash grand jury subpoena and distinguishing *Simels* because the Government had "represented repeatedly that grand jury investigations into Defendants' alleged violent activity are ongoing").

For these reasons, courts in this District regularly deny motions to quash grand jury subpoenas on the basis that they were issued with an improper purpose. *See, e.g., Salameh*, 152 F.3d at 109; *Meregildo*, 876 F. Supp. 2d at 449; *Bin Laden*, 116 F. Supp. 2d at 493; *United States* v. *Blech*, 208 F.R.D. 65, 68 (S.D.N.Y. 2002).

## 2. Standing and Attorney-Client Privilege

If the subpoena is directed at a nonparty, the party must demonstrate standing to challenge the subpoena by showing that he or she seeks to protect a claim of personal privilege or right. *Langford* v. *Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975). The analysis centers on the "*movant's* legitimate interests" and whether the subpoena affects those interests. *United States* v. *Nachamie*, 91 F. Supp. 2d 552, 558-60 (S.D.N.Y. 2000) (quoting *United States* v. *Giampa*, 1992 WL 296440, at *1 (S.D.N.Y. Oct. 7, 1992) and *United States* v. *Raineri*, 670 F.2d 702, 712 (7th Cir. 1982)) (emphasis added). "[N]o privilege has been held to exist between a client and an

accountant." *United States* v. *Crea*, 853 F. Supp. 72, 72 (E.D.N.Y. 1994) (citing *United States* v.

*Bein*, 728 F.2d 107 (2d Cir. 1984).

The burden of establishing the existence of an attorney-client privilege, or work-product

protection rests upon the party asserting it.  *United States v. International Bhd. Of Teamsters*, 119

F.3d 210, 214 (2d Cir. 1997). "The burden must be met by an evidentiary showing based on

competent evidence, and cannot be discharged by mere conclusory or *ipse dixit* assertions." *In re*

*Grand Jury Proceedings*, 2001 WL 1167497, at *3 (S.D.N.Y. Oct. 3,2001).

The Second Circuit has directed that because the attorney-client privilege "stands in

derogation of the public's 'right to every man's evidence, . . . it ought to be strictly confined within

the narrowest possible limits consistent with the logic of its principle.'" *Int'l Bhd. of Teamsters*,

119 F.3d at 214 (quoting *In re Horowitz,* 482 F.2d 72, 81 (2d Cir. 1973)). The privilege applies

only: "(1) where legal advice of any kind is sought (2) from a professional legal advisor in his

capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by

the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the

legal advisor, (8) except the protection be waived." *Id.*

The attorney-client privilege is designed solely to protect the relationship between lawyer

and client.  Thus, while disclosure to a third party generally vitiates the attorney-client privilege,

courts have recognized an exception to this rule where the third party is a necessary intermediary

between the client and attorney.  *See United States* v. *Adlman*, 68 F.3d 1495, 1499(2d Cir. 1995);

*United States* v. *Kovel*, 296 F.2d 918, 921-22 (2d Cir. 1961) (Friendly, J.); *see also, e.g.*, *In re*

*Lindsey*, 158 F.3d 1263, 1279-80 (D.C. Cir. 1998). "[T]he typical case in which the intermediary

doctrine has been held to apply involves the client's fundamental inability to communicate without

an intermediary"—the paradigmatic example being where an attorney and client speak different languages and require an interpreter or translator to communicate. *In re Lindsey*, 158 F.3d at 1280; *accord United States* v. *Ackert*, 169 F.3d 136, 139-40 (2d Cir. 1999);*United States* v. *Kovel*, 296 F.2d at 921-22. In *Kovel*, however, the Second Circuit made clear that the doctrine extends to other situations where an intermediary is necessary, such as where an attorney needs an accountant to understand the client's financial information. *See* 296 F.2d at 921-22.

The "intermediary" or "agency" exception, however, is narrowly construed. Thus, for example, a "communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client." *Ackert*, 169 F.3d at 139. Instead, "to avail itself of the 'agency' exception and avoid the consequences of a waiver," a party asserting privilege must establish two elements. *National Education Training Group, Inc.* v. *Skillsoft Corp.*, No. M8-85,1999 WL 378337, at *4 (S.D.N.Y. June 10, 1999). First, the party must show that he or she had a reasonable expectation of confidentiality with respect to communication with the third party. *See id.* Second, the party asserting the privilege must establish that disclosure to the third party "was necessary . . . to obtain informed legal advice." *Id.*; *accord Lindsey*, 158 F.3d at 1279-80. "[T]he 'necessity' element means more than just useful and convenient, but rather requires that the involvement of the third party be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communication." *National Education Training Group, Inc.* v. *Skillsoft Corp.*, 1999 WL 378337, at *4; *accord In re Application Pursuant to 28 U.S.C. § 1782*,249 F.R.D. at 101-02; *Allied Irish Banks* v. *Bank of America, N.A.*, 240 F.R.D. 96, 104 (S.D.N.Y.2007) ("[W]here the third party's presence is merely 'useful' but not 'necessary,' the privilege is lost.").

### B.  Discussion

Bergstein's motion should be denied because he cannot meet his "burden of showing that the Government's use of the grand jury was improperly motivated." *Bin Laden*, 116 F. Supp. 2d at 492 (quoting *Leung*, 40 F.3d at 581); *see also United States* v. *Sasso*, 59 F.3d at 352 ("There is a presumption that [a post-indictment] subpoena had a proper purpose.").  Simply put, the Subpoena was issued in connection with an ongoing investigation into conduct not charged in the Indictment, and it does not seek privileged materials. *Meregildo*, 876 F. Supp. 2d 445 (denying motion to quash grand jury subpoena on the basis that the Government had "represented repeatedly that grand jury investigations into Defendants' alleged violent activity are ongoing").  Although the Subpoena could result in the production of materials relevant to this matter, its importance to ongoing investigations is explained in the Government's *ex parte* letter to the Court submitted in connection with this memorandum.  Bergstein's motion—which appears to be part of a broader litigation strategy to impede or slow the grand jury's ongoing investigation—fails for the very same reasons that the Court denied Bergstein's motion to quash the grand jury subpoena issued to Weingarten.  Accordingly, Bergstein's motion should be denied.

### 1.  The Subpoena Was Properly Issued

The Subpoena was properly issued pursuant to an ongoing grand jury investigation, and the fact that there may be overlap with this case provides no basis to quash it.  This case is thus far different from *Simels*, on which Bergstein primarily relies.  In *Simels*, the Government issued a trial subpoena to the defendant's criminal attorney, who was representing him on pending charges. *Simels*, 767 F.2d at 27-30.  The trial subpoena sought, among other things, information relating to the defendant's payments to his attorney.  The Government represented to the Court that the

subpoena was "solely for evidentiary purposes" and was issued to obtain evidence that could be used at trial to prove an "element" of the charged crime. *Id.* at 29. The recipient of the subpoena and others objected to its issuance. In response, the Government withdrew the subpoena and replaced it with a grand jury subpoena seeking the same materials. *Id.* at 28.

The facts in this case stand in stark contrast to those in *Simels*. Here, the Government never issued a trial subpoena to Gaynor for the tax records, contrary to *Simels*. Nor has the Government in this case represented that the materials are sought "solely for evidentiary purposes" to prove an element of the charged crime at trial. In fact, the opposite is true. While the Subpoena may lead to the production of materials relevant to the charged conduct which might be used by either party at trial, the grand jury has an ongoing investigation into conduct beyond that charged in the Indictment, as the Court has already found. As the *ex parte* submission makes clear, the grand jury requires the materials sought in the Subpoena in order to proceed with its investigation and to make any ultimate determination as to criminal wrongdoing.

Nor is there anything suspicious about the timing here. As the *ex parte* submission demonstrates, the grand jury investigation into other conduct and actors has been proceeding in parallel fashion for some time. Indeed, Bergstein's claim that the Government is using a grand jury subpoena as a pretext for trial preparation is disingenuous for the straightforward reason that he has recognized that the Government has an ongoing investigation. (*See* Ex. A, Oct. 9, 2017 Ltr. at 1 ("We also understand that your continuing investigation is covering not only facts and issues that are part of the current indictment, but also includes conduct not charged in the Indictment. Please advise whether the government intends on filing a superseding indictment . . . .").

Thus, in these circumstances, the presumption of regularity, strengthened by the Government's detailed proffer regarding the active grand jury investigation and Bergstein's counsel's acknowledgement of the existence of an investigation into "conduct not charged in the Indictment" (*id.*), demonstrates "that the dominant purpose of the Grand Jury proceedings is proper." *Ohle*, 678 F. Supp. 2d at 233; *Raphael* 786 F. Supp. at 358. That Bergstein has now filed his third separate motion to quash a grand jury subpoena issued in connection with an ongoing investigation—as found by the Court and acknowledged by Bergstein's counsel in the letter cited above—reflects an effort to interfere with that investigation and hinder the grand jury's ability to obtain relevant evidence and information. It should be denied.

To the extent that the Court should "order the government to disclose to the defense, or to the Court in camera, any other grand jury subpoenas that have been issued and/or served in the last 6 months that have resulted in the production of evidence that the government may use to prepare for or during [sic] the upcoming February 5, 2018 trial," (Mot. 6), Bergstein's request is meritless and unsupported by any legal authority. In any event, Bergstein has not identified any facts reflecting that the Government has abused its grand jury subpoena power, and his motion itself reflects an effort to impede the grand jury process.

## 2. Bergstein Lacks Standing

Bergstein next claims that the Subpoena should be quashed because it seeks material that is protected by the attorney-client privilege, citing *United States* v. *Kovel*, 296 F.2d 918, 921-22 (2d Cir. 1961) (Mot. 7). Bergstein summarily argues that Bergstein "retained as legal counsel the Hochman Firm, a law firm whose attorneys practice in providing tax litigation services" and the

"Hochman Firm had a Kovel arrangement with the Gaynor Firm." (Mot. 8). Bergstein's unsupported argument is meritless and should be rejected.

Bergstein's claim of privilege under *Kovel* is woefully inadequate. The law is clear that Gaynor's work preparing Bergstein's personal income tax returns is not privileged because Bergstein says it is. In fact, Bergstein has not even attempted to satisfy the elements of establishing an attorney-client privilege under *Kovel*, much less explain how the records requested by the Subpoena—Bergstein's tax returns and his accountant's workpapers and communications with Bergstein—are privileged. The notion that Bergstein can shield the preparation of his personal income taxes from discovery by claiming a *Kovel* relationship with his accountant defies common sense and is unsupported by facts or law. *Cf. United States* v. *Hatfield*, 2010 WL 183522, at *2 (S.D.N.Y. Jan. 8, 2010) (holding that an accountant's "retention by [defendant's] personal lawyers . . . cannot magically transform routine corporate accounting work into a protected *Kovel* relationship" and observing that "if[defendant] succeeded at this gambit, every public company would soon use similarly bizarre retention arrangements to shield their accounting findings from discovery. Thus, Bergstein's *ipse dixit* privilege claims fail as a matter of law. See, e.g., *In re Grand Jury Proceedings*, 2001 WL 1167497, at *3 (S.D.N.Y. Oct. 3,2001) ("The burden must be met by an evidentiary showing based on competent evidence, and cannot be discharged by mere conclusory or *ipse dixit* assertions.").

Accordingly, Bergstein has neither standing, nor a basis in law, to assert that Gaynor may resist compliance with the Subpoena. (Oct. 10, 2017 Mem.& Order [Dkt. 142] at 2).

## **CONCLUSION**

For the foregoing reasons, Bergstein's motion to quash the Subpoena should be denied.

Dated:  December 27, 2017
        New York, New York

                        Respectfully submitted,

                        JOON H. KIM
                        Acting United States Attorney

            By:     ____/s/_____
                        Edward A. Imperatore
                        Robert W. Allen
                        Elisha J. Kobre
                        Assistant United States Attorneys
                        Telephone: (212) 637-2327/ 2216 / 2599